UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE SUSAN ILLSTON

| | | |
|---|---|---|
| FLATTEN, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 3:21-cv-07031-SI |
| | ) | |
| SMITH, et al., | ) | San Francisco, California |
| | ) | Friday |
| Defendant. | ) | April 29, 2022 |
| _____ | ) | 9:29 a.m. |

## **TRANSCRIPT OF MOTION HEARING HELD VIA ZOOM**

**APPEARANCES**:

| | |
|---|---|
| **For Plaintiffs:** | SCOTT LAW FIRM<br>1388 Sutter Street, Suite 715<br>San Francisco, CA 94109<br>**BY:  JOHN SCOTT, ESQ.** |
| | WILLIAM A. COHAN, P.C.<br>2888 Loker Avenue E, Suite 202<br>Carlsbad, CA 92010<br>**BY:  WILLIAM COHAN, ESQ.** |
| **For Defendants:** | OFFICE OF THE ATTORNEY GENERAL<br>1515 Clay Street, 20th Floor<br>Oakland, CA 94612<br>**BY:  KYMBERLY SPEER, ESQ.** |
| | COLANTUONO, HIGHSMITH AND WHATLEY P.C.<br>790 E. Colorado Boulevard, Suite 850<br>Pasadena, CA 91101-2109<br>**BY:**  PAMELA GRAHAM, ESQ. |
| Transcription Company: | Access Transcripts, LLC<br>10110 Youngwood Lane<br>Fishers, IN 46038<br>(855) 873-2223<br>www.accesstranscripts.com |

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Friday - April 29, 2022**                                    **9:29 a.m.**

                    **P R O C E E D I N G S**

                           ---oOo---

          **THE COURTROOM DEPUTY:**  Now calling Case Number 21-cv-7031, Flatten et al v. Smith et al.  Counsel, please state your appearances for the record, starting with Plaintiff.

          **MR. SCOTT:**  Good morning, Your Honor.  John Scott appearing for the Plaintiffs, along with my colleague Mr. Cohan.  Mr. Cohan will be arguing this motion.

          **THE COURT:**  All right.  Good morning to both of you.

          **MR. COHAN:**  Morning.

          **MS. SPEER:**  Good morning.  This is Kim Speer for Defendant White.

          **THE COURT:**  Good morning.

          **MS. SPEER:**  Good morning.

          **MS. GRAHAM:**  Good morning, Your Honor. Pamela Graham on behalf of Defendant Bruce Smith.

          **THE COURT:**  Good morning.

          **MS. GRAHAM:**  Good morning.

          **THE COURT:**  All right, this is Defendant's motion to dismiss the first amended complaint.  And I will tell you, I am inclined to grant it mainly for the reasons that they've suggested, that the allegations, although lengthy and really quite interesting, are speculative and conclusory and just

don't amount to a RICO claim.  So that's my inclination, but I'll be happy to hear from you, Mr. Cohan.

**MR. COHAN:**  Thank you, Your Honor.  A couple of things.

I feel like, given the circumstances with which we're faced, it's kind of difficult to imagine how much more detail and how much more specificity we could possibly -- or any similarly situated victims of this alleged RICO conspiracy could have done more.  We've shown a bunch of facts which are essentially disputed.  And what this boils down to really is the defendants' claims that they were engaged in law enforcement activity and our allegations are Fourth Amendment violations and that they're stealing cannabis.  However, this is completely wrong.  We are alleging extortion.  Extortion means, in this case, that --

**THE COURT:**  And you're alleging that based on the ordinance?

**MR. COHAN:**  Well, that was just where they institutionalized it.  In Mendocino County, they sort of seceded from the United States and the state of California by creating ordinances that were clearly in violation of state and federal law, extorting money by the DA and extorting money by the sheriff through the so-called restitution and zip-ties programs.  But once it became possible to grow cannabis legally, the Defendants and their co-conspirators just were

unable to muster the essential self-restraint.  And I invite the Court's attention to the guilty pleas by Tatum and Huffaker, which were not Fourth Amendment violations, Your Honor.  They were not thefts of property that was seized.

THE COURT:  I agree with you.  Those are clear-cut illegal activities.

MR. COHAN:  Well --

THE COURT:  But how do you get that into a RICO conspiracy from the sheriff and the DA of Mendocino County?

MR. COHAN:  Well, because of the activities of Tatum and Huffaker in Mendocino County with not only the consent but the active cover-up by the sheriff through Tatum issuing a false press release under Sheriff Johnson, making a bunch of false statements claiming that the Plaintiffs and -- well, in this case, Plaintiff Flatten and another victim named B.L., identified in the indictments against Huffaker and Tatum, didn't report the crimes when it's undisputed they did report the crimes.

So why would undersheriff of Mendocino County be telling lies to cover up for Tatum and Huffaker unless they're co-conspirators?  I've heard no plausible explanation for that, but we don't have to prove it.  This is, as the Court knows, a civil case.  We only have to prove by a preponderance, and we're entitled to have all inferences indulged in our favor.

Now, inviting the Court's attention, I was about to, to the indictments against Tatum and Huffaker.  They're not charged with violating the Fourth Amendment and then stealing cannabis.  They're charged with extortion, which is not theft.  It's demanding money or property under claim of official right for their own purposes, having nothing more to do with law enforcement than that that was the cover by which they were able to perpetrate these hundreds of extortions.  So I don't know.  Here, we're faced with Plaintiffs who are confronted by corrupt law enforcement.  Their lives are in jeopardy for daring to report this because who's going to protect them from the corrupt law enforcement people?  Or as Mr. Scott said once, "Who are going to call?  Ghostbusters?"  The only people who could protect you are -- you want to be somebody who's going to take on all the law enforcement establishment in a corrupt county?  That's what we're faced with, Your Honor.  How much more could you expect us to do?

Furthermore, we would -- we have gathered some more evidence now of the warehouse where -- I should say a warehouse where quantities of the extorted cannabis have been stored, a trucking company that has been transporting cannabis around the United States, and Lieutenant Jason Cadillo of the Mendocino County Sheriff's Department, who lives on the premises where this warehouse is located in Ukiah.  And so we'd be naming Lieutenant Cadillo and Gabriel Rensen, who

operates the company that he is President of, the company called Penofin, that owns this warehouse, and the trucking company executive, whom we would name as Gilbert Durant. So --

THE COURT:  And what is it you would say about these folks?

MR. COHAN:  Well, they're involved in the storage and transportation of the extorted cannabis, Your Honor. Again, you can't expect us to produce someone who says, oh, yeah, I bought a ton of marijuana from one of these corrupt cops.  I mean, not unless we can offer the person immunity and we would otherwise prosecute them.  We have no such power, Your Honor, because we're just civil plaintiff lawyers here. So --

THE COURT:  So tell me what exactly these folks did that you would like to name?

MR. COHAN:  Well, first of all, Mr. Cadillo should say Lieutenant Jason Cadillo of the Mendocino County Sheriff's Department lives within a fenced area that contains the warehouse, and he lives there.  And we've got photos of his official vehicle, Mendocino County Sheriff's Department vehicle right there, along with the most amazing security for this warehouse where supposedly legal products involving wood finishes are stored.  But there are numerous security cameras, razor wire, and Lieutenant Caudillo living on the premises to

provide security for what we believe are large quantities of the cannabis that's stored there and for --

THE COURT:  Why do you believe that?  I mean, what evidence do you have of that?

MR. COHAN:  Well, the evidence is that we have a trucking company that is operating without a reasonable explanation for all the trucks they have, other than their trucking cannabis around the country.  We have the storage facility whence it's stored before it's trucked to the destination or destinations for which it's destined.  A lieutenant is living there, providing security with a bunch of security cameras, which are way over the top for any kind of legal quantities there.  We have a witness who has told us that large black duffel bags are being removed from the warehouse.

Again, it's all circumstantial evidence at this point, Your Honor.  We can't get search warrants.  We can't conduct raids.  Of course, if we had subpoenas, we could look at the kind of bank records that FBI Agent Roberts was able to acquire that showed half a million dollars from Officer-of-the-Year Tatum, who was maintaining his cover by sharing, as these Defendants and their co-conspirators did.  They weren't that greedy.  They didn't take all of the cannabis proceeds for themselves.  They gave millions to the County to maintain the cover that, gee, we're just helping the

taxpayers out here.

So without the ability to use guns and badges to force the Defendants and their co-conspirators to allow us to gather more evidence, we need to have subpoena power to gather more circumstantial evidence until and unless we get more indictments of any, some, or all of these co-conspirators. And the investigation by the grand jury in the Northern District that yielded the indictments against Hayden and Huffaker are, according to our sources, continuing.

So we anticipate that some of these Defendants will ultimately be indicted. Of course, the criminal case can extract information by promising, as Your Honor is well aware, benefits under 5K2.0 to cooperate, as Tatum and Huffaker are undoubtedly doing. I say undoubtedly. It's the only reasonable inference from the -- I'm trying to think how long it's been. It's been more than a year, and the sentencings keep getting delayed. Typically, in my experience doing federal criminal defense work, that only takes place when the Defendants are providing cooperation.

But again, grand jury proceedings are secret. Our information is only from people who have been called to testify and who are allowed to speak to third parties. And frankly, these people are terrified, Your Honor, as any rational people similarly situated would be. Who's going to protect them? The federal government doesn't have the

resources to go around protecting all the licensees up there. And if these Defendants and their co-conspirators could have just left well enough alone, but you see, people situated as our clients are destined to put the corrupt law enforcement people out of business.  They've been hiding behind the federal prohibition to justify what they're doing.  It's kind of a foregone conclusion at this point that cannabis is going to be legalized nationwide.  We're now up to 37 States.

And again, as I said earlier, the whole justification for interfering with intrastate commerce in the 2005 Supreme Court case, Gonzalez v. Rich, was the failure to regulate the intrastate manufacture and possession of marijuana would leave a gaping hole in the Controlled Substances Act.  Well, there is no longer any such failure to regulate that intrastate commerce, Your Honor.  Thirty-seven States are doing it, including, most importantly, the state of California, which has issued licenses to the Plaintiffs here.  But if enough people get licenses and we get rid of the corrupt cops, pretty soon, California is going to be like Colorado, raising millions of dollars to support public education and not supporting a category of corrupt cops who have been doing this for -- I mean, we're on our second or third generation of corrupt law enforcement people in the Emerald Triangle now.

I mean, it's understandable that the officers -- power tends to corrupt.  Absolute power tends to corrupt absolutely.

They see people growing tons of cannabis and making millions of dollars illegally.  The sheriff says, well, gee, we want to get some of this, too, and so they create this so-called zip-ties program, which is clearly nothing but extortion.  Same thing with the restitution program.  I don't want to waste the Court's time.  I will --

MR. SCOTT:  However, Your Honor --

MR. COHAN:  Uh-oh.

THE COURT:  You're not wasting my time, Mr. Cohan.  You've got as much time as you need.  So don't worry about that.

MR. COHAN:  Okay.  Well, I don't want to be redundant.  And I've named three people and given you a general description.  If the Court's inclined to grant the motion, or even if the Court is going to deny it, we certainly intend to amend the complaint to add more facts and more circumstantial evidence, which is all we're going to get until somebody decides to say, you know what, I bought a ton of weed from ** Undersheriff Johnson or his brother and his father, who were growing 500 marijuana plants on their property and the DEA swooped down in 2012.  But nothing ever happened to Undersheriff Johnson.  He kept his job.  He just said, oh, I didn't know they were doing it, even though he lived next door.  Come on, Judge.

THE COURT:  All right.  Thank you.

Mr. Scott.

MR. SCOTT: Yeah. I think most importantly, Your Honor, we believe that the missing link to -- or the missing piece of the puzzle was how was the marijuana that was being taken from our clients and other growers -- if it wasn't being buried, what was happening to it? And now we believe we are able to identify at least one person associated with the warehouse who is storing the marijuana, who is associated with other co-conspirators, including Mr. Allman, and that would be Gabriel Rensen.

And you've got a Lieutenant Cadillo living in a double-wide trailer right next to the warehouse where there's razor wire, videos. What's the Lieutenant doing there, and why is he living there? If -- it just raises an inference that he's there to protect the cannabis. That's why he's there. And now, we also have identified the owner of a trucking company, Gilbert Duran, who has close association with Mr. Rensen and with Sheriff Allman. We can connect all those dots, Your Honor. And he's got a trucking company that has been transporting, we believe, marijuana and other things from Mendocino County.

THE COURT: Based on what? I mean, what evidence do you have of that?

MR. SCOTT: Well, we have evidence that he has a trucking company, that his trucking company delivers and picks

up goods to transport in Ukiah, and that Mr. Duran has a close relationship with Mr. Rensen. And they also both have a close relationship with Mr. Allman and are practically neighbors with Bruce Smith and Steve White and Willis (phonetic). This is a family affair, and we connect all these dots to these people.

Now, if we have an opportunity to do some discovery, we believe we can, you know, bring direct evidence instead of circumstantial evidence. But right now, we have circumstantial evidence. And last time I checked, circumstantial evidence can be as persuasive as direct evidence, depending which way you want to look at it. And by a preponderance the evidence, I mean, Your Honor, you know, I've tried a lot of civil cases where, you know, I was able to win on circumstantial evidence and was able to convince the jury by a preponderance of the evidence that my client's rights have been violated. And I don't -- it seems to me at this point, we should be given an opportunity to amend and we should be given an opportunity to do discovery. I mean, this is not -- these facts are not in genuine dispute. And now, they've been --

THE COURT: Well, that there's a warehouse and there's a trucking company that trucks stuff.

MR. SCOTT: Yes. And we believe is associated with the conspiracy and is trucking marijuana. Now, do we have

direct evidence yet that those trucks are, in fact, trucking marijuana?  Don't have direct evidence yet, but I believe we can do discovery.  We can get it.

THE COURT:  Okay.  Thank you.

MR. SCOTT:  There are records.  There are records that we can subpoena to try to track where those trucks stopped, where they went, where -- what they delivered to who, when, where.

THE COURT:  Okay.  Thank you.

Ms. Speer, Ms. Graham.

MS. SPEER:  Just briefly, Your Honor, what we have heard this morning simply makes our point.  There is nothing that is stated of a factual nature that has any connection with Defendant White, who's my client, or the California Department of Fish and Wildlife.  It just -- there's nothing there.  It's all fantasy.  So we would respectfully submit that there's nothing to the suit but speculation and certainly not a rational basis to be intruding on the Defendants' privacy by having their bank accounts subpoenaed.

THE COURT:  All right.  Thank you.

Ms. Graham.

MS. GRAHAM:  Just to draw one point on what Ms. Speer just said.  The same is true as to my client, Mr. Smith.  We even saw in the most recent amendment from the original pleading to this pleading that there was nothing to

add as to Mr. Smith's conduct.  As Your Honor knows, since that time, one of the allegations that involved the search for the Borges and Gurr property, Your Honor had granted summary judgment in favor of the County on that issue.  So we agree that any additional evidence that was added to this pleading adds nothing in terms of a RICO claim against Mr. Smith.  And likewise, the circumstantial evidence that was mentioned today also adds nothing.  It is just as speculative, and there's no factual evidence to support any further amendment of this pleading.  So we would request that you're on a granted without leave to amend.

**THE COURT:**  Does anybody -- does either you or -- Ms. Graham or Ms. Speer, do you know anything about this warehouse and the trucking company?

**MS. SPEER:**  No, Your Honor.

**MS. GRAHAM:**  I do not, Your Honor.

**THE COURT:**  Okay.  Anything else, Mr. Cohan, Mr. Scott?

**MR. COHAN:**  Only that, Your Honor, even in the criminal cases, the indictments against Huffaker and Tatum, the charge to which they pled guilty, both of them, was extortion and conspiracy to commit extortion, even though they have less evidence there of what happened to the cannabis, but they have the bank accounts.  When you see a half a million dollars deposited in addition to the compensation, half a

million in cash, where did the cash come from?  Well, by inference, it came from marijuana sale.  We're in the same situation here, only we don't have access to the bank accounts yet.  We certainly --

THE COURT:  Well, with respect to Huffington [sic] and Tatum, they had witnesses to testify.

MR. COHAN:  Witnesses to testify to what?  Only that they were extorting the cannabis using the pretext of being law enforcement, just like White and Smith here.  They got phony search warrants alleging water violations.  They never bothered to seize one shred of evidence of any water violations, which didn't exist, and they seized the cannabis.  And then, the cannabis disappears.  No chain of custody and admissions that they seized hundreds of times together.

So this claim that there is no evidence against them, they have no explanation for the -- for obtaining phony search warrants and what happened to the cannabis.  Well, it was buried by some people we don't know.  We don't know where, when, and by whom.  Take our word for it.  Why would we?  Oh, they have badges.  That's right.  We're supposed to believe them because they have badges.  Nothing more, Your Honor.

THE COURT:  All right.  Thank you.

Mr. Scott, anything?

MR. SCOTT:  No, Your Honor.

THE COURT:  Okay.  Thank you very much.  The matter

will be submitted.  You'll hear from me shortly.  Thank you.

        **MS. SPEER:**  Thank you.

        **MR. COHAN:**  Thank you, Your Honor.

        **MS. GRAHAM:**  Thank you, Your Honor.

    (Proceedings adjourned.)

**C E R T I F I C A T I O N**

    I, Ilene Watson, court-approved transcriber, hereby certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____

Ilene M. Watson, AAERT No. 447

Tuesday, June 14, 2022